**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

LINDA ATIYEH
30 York Street
Gettysburg, PA  17325,

GETTYSBURG INVESTORS LLC
26 York Street
Gettysburg, PA  17325,

THE GETTYSBURG MOOSE LLC
19 York Street
Gettysburg, PA  17325,

LINCOLN SQUARE LLC
3 Chambersburg Street
Gettysburg, PA  17325,

GALLERY 30 LLC,
26 York Street
Gettysburg, PA  17325,

THE UPPER CRUST LLC,
19 York Street
Gettysburg, PA  17325,

JAMILIE ABRAHAM LLC
3 Chambersburg Street
Gettysburg, PA  17325,

    Plaintiffs,

  v.

BOROUGH OF GETTYSBURG
Gettysburg Municipal Building
50 East High Street
Gettysburg, PA  17325,

THEODORE H. STREETER
GETTYSBURG BOROUGH MAYOR,
Gettysburg Municipal Building
59 East High Street
Gettysburg, PA  17325,

CIVIL ACTION NO.

**JURY TRIAL DEMANDED**

99095435

SUSAN NAUGLE
GETTYSBURG BOROUGH COUNCIL
Gettysburg Municipal Building
59 East High Street
Council Chambers
Gettysburg, PA  17325,


WESLEY K. HEYSER
GETTYSBURG BOROUGH COUNCIL
Gettysburg Municipal Building
59 East High Street
Council Chambers
Gettysburg, PA  17325,

PATRICIA A. LAWSON
GETTYSBURG BOROUGH COUNCIL
Gettysburg Municipal Building
59 East High Street
Council Chambers
Gettysburg, PA  17325,

JACOB SCHINDEL
GETTYSBURG BOROUGH COUNCIL
Gettysburg Municipal Building
59 East High Street
Council Chambers
Gettysburg, PA  17325,

CHRIS BERGER
GETTYSBURG BOROUGH COUNCIL
Gettysburg Municipal Building
59 East High Street
Council Chambers
Gettysburg, PA  17325,

CHARLES STRAUSS
GETTYSBURG BOROUGH COUNCIL
Gettysburg Municipal Building
59 East High Street
Council Chambers
Gettysburg, PA  17325,

99095435

JOHN LAWVER
GETTYSBURG BOROUGH COUNCIL
Gettysburg Municipal Building
59 East High Street
Council Chambers
Gettysburg, PA  17325,

CHARLES R. GABLE
GETTYSBURG BOROUGH MANAGER
Gettysburg Municipal Building
59 East High Street
Gettysburg, PA  17325,

RICHARD L. MILLER II
BOROUGH OF GETTYSBURG PARKING
MANAGER
Gettysburg Municipal Building
59 East High Street
Gettysburg, PA  17325,

               Defendants

## **COMPLAINT**

Plaintiffs Linda Atiyeh ("Atiyeh"), Gettysburg Investors LLC ("Gettysburg Investors"), The Gettysburg Moose LLC (the "Gettysburg Moose"), Lincoln Square LLC ("Lincoln Square"), Gallery 30 LLC ("Gallery 30"), The Upper Crust LLC ("The Upper Crust"), and Jamilie Abraham LLC ("Jamilie") (collectively, "Plaintiffs") hereby submit this Complaint against defendants Borough of Gettysburg (the "Borough"), Theodore H. Streeter ("Streeter"), Susan Naugle ("Naugle"), Wesley K. Heyser ("Heyser"), Patricia A. Lawson ("Lawson"), Jacob Schindel ("Schindel"), Chris Berger ("Berger"), Charles Strauss ("Strauss"), John Lawver ("Lawver"), Charles R. Gable ("Gable"), and Richard L. Miller II ("Miller") (collectively, "Defendants").

As set forth herein, to retaliate against Atiyeh for her successful opposition to the Borough and its leadership in a prior zoning dispute, Defendants recently enacted amendments to

a decades-old parking ordinance targeted to deny Atiyeh the crucial ability to reserve parking spaces in front of her various businesses in the Borough, including Gallery 30, The Upper Crust, and Jamilie, but preserving the ability to reserve parking for all other similarly-situated businesses in the Borough.  Defendants' actions have interfered with Atiyeh's ability to access her property and operate her businesses, and constitute an unconstitutional deprivation of Plaintiffs' rights guaranteed by the United States Constitution Equal Protection and Due Process Clauses, and the First Amendment.  Plaintiffs now sue to put an end to Defendants' discriminatory, irrational, and arbitrary practices.

In support of this Complaint, Plaintiffs aver as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because this case arises under the laws and Constitution of the United States.  The Court has supplemental jurisdiction over the asserted state law claims under 28 U.S.C. § 1367(a).

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all of the Defendants reside within this District and all of the claims asserted by Plaintiffs arose within this District.

## PARTIES

3.      Plaintiff Atiyeh is an adult individual with an address of 30 York Street, Gettysburg, Pennsylvania 17325.

4.      Plaintiff Gettysburg Investors is a Pennsylvania limited liability company with an address of 26 York Street, Gettysburg, Pennsylvania 17325.

5.      Plaintiff Gettysburg Moose is a Pennsylvania limited liability company with an address of 19 York Street, Gettysburg, Pennsylvania 17325.

99095435

6.     Plaintiff Lincoln Square is a Pennsylvania limited liability company with an address of 3 Chambersburg Street, Gettysburg, Pennsylvania 17325.

7.     Plaintiff Gallery 30 is a Pennsylvania limited liability company with an address of 26 York Street, Gettysburg, Pennsylvania 17325.

8.     Plaintiff The Upper Crust is a Pennsylvania limited liability company with an address of 19 York Street, Gettysburg, Pennsylvania 17325.

9.     Plaintiff Jamilie is a Pennsylvania limited liability company with an address of 3 Chambersburg Street, Gettysburg, Pennsylvania 17325.

10.    Defendant the Borough is a municipality organized under the laws of the Commonwealth of Pennsylvania and is subject to the provisions set forth in the Borough Code, 8 Pa. C.S. §§ 101, *et seq.*

11.    The Borough operates through a "weak mayor-strong council" form of government.

12.    The Borough Mayor is responsible for the enforcement of all ordinances and regulations within the Borough.

13.    Defendant Streeter is an adult individual and, at all times relevant to this Complaint, served as the Borough Mayor.

14.    The Borough Council is the Borough's governing legislative body and has policymaking authority for the Borough.

15.    Defendants Naugle, Heyser, Lawson, Schindel, Berger, Strauss, and Lawver (collectively, the "Councilmembers") are adult individuals and, at all times relevant to this Complaint, served as members of the Borough Council.

99095435

16.     The Borough Council has the authority to appoint a Borough Manager, who is responsible for directing and supervising the daily work of the administrative staff and coordinating the activities of all municipal departments within the Borough, including the Borough Parking Department.

17.     Defendant Gable is an adult individual and, at all times relevant to this Complaint, served as the Borough Manager.

18.     Defendant Miller is an adult individual and, at all times relevant to this Complaint, served as the Borough of Gettysburg Parking Manager.

19.     At all times relevant to this Complaint, Defendants acted under color of state law.

20.     Plaintiffs bring this action against defendants Streeter, Naugle, Heyser, Lawson, Schindel, Berger, Strauss, Lawver, Gable, and Miller (collectively, the "Individual Defendants") in their official capacities only.

## **BACKGROUND**

21.     Atiyeh is a successful businesswoman who owns and operates Gettysburg Investors, Gettysburg Moose, Lincoln Square, Gallery 30, The Upper Crust, and Jamilie (collectively, the "Businesses"), all of which are located in downtown Gettysburg.

22.     Gallery 30 is a 9,000 square foot retail store and renowned gallery of fine art and craft located at 26 York Street, Gettysburg, Pennsylvania 17325 (the "Gallery 30 Property"), which is celebrating 40 years as a literary and artistic landmark.

23.     Gettysburg Investors owns the Gallery 30 Property.

24.     Atiyeh is the sole member of Gettysburg Investors.

6

25.     The Upper Crust is a 10,000 square foot restaurant that specializes in wood-fired cuisine with an open-air kitchen and three wood-fired brick ovens, located at 19 York Street, Gettysburg, Pennsylvania 17325 (the "Upper Crust Property").

26.     Gettysburg Moose owns the Upper Crust Property.

27.     Atiyeh is the sole member of Gettysburg Moose.

28.     Jamilie is a soon-to-be opened, full-service, Mediterranean restaurant located on the historic Lincoln Square at 3 Chambersburg Street, Gettysburg, Pennsylvania 17325 (the "Jamilie Property").

29.     Lincoln Square owns the Jamilie Property.

30.     Atiyeh is the sole member of Lincoln Square.

31.     Atiyeh has invested over $8 million in purchasing, restoring, and preserving historic properties in the Borough.  Of this $8 million, Atiyeh invested over $3 million in the Properties.

32.     Atiyeh has received various awards and accolades in recognition of her preservation and restoration efforts, including an Outstanding Preservation Award by Historic Gettysburg Adams County.

33.     Atiyeh's Businesses have revitalized downtown Gettysburg and have created a surge in economic growth in the community.

**The Signage Dispute**

34.     Beginning in the Fall of 2016, Defendants have pursued a campaign of interfering with Atiyeh's lawful use of her Properties and operation of her Businesses.

35.     On November 9, 2016, the Borough issued a written notice (the "Notice of Violation") to Gallery 30, declaring that certain merchandise hanging on the exterior western

7

99095435

wall of the Gallery 30 Property constituted "illegal signage" in violation of Borough Ordinance Number 19-111(3) (the "Sign Ordinance").

36.     The Notice of Violation marked the beginning of a months-long dispute between Atiyeh and the Borough regarding the Borough's arbitrary and unlawful attempt to enforce the Sign Ordinance against Atiyeh, Gettysburg Investors, and Gallery 30.

37.     Despite no legal basis to do so, the Borough threatened Atiyeh with arrest and significant monetary fines if she did not immediately remove the merchandise from the Gallery 30 Property.

38.     Atiyeh appealed the Borough's Notice of Violation to the Zoning Hearing Board.

39.     On February 13, 2017, the Zoning Hearing Board entered a decision in Atiyeh's favor.

40.     Even after the Zoning Hearing Board entered its decision in Atiyeh's favor, Defendants continued to harass Atiyeh, forcing Atiyeh to apply to the Historic Architectural Review Board (the "HARB"), an advisory board to the Borough Council, for approval to display merchandise on the exterior wall of the Gallery 30 Property.

41.     On April 19, 2017, the HARB voted in favor of Atiyeh, Gettysburg Investors, Gallery 30, and issued a "Certificate of Appropriateness," approving of the display of merchandise.

42.     As a consequence of the Borough's unfounded attempts to interfere with the use of her property, Atiyeh was forced to incur over $30,000 in legal and other related fees and costs.

43.     The absurdity and vindictiveness of Defendants' actions garnered significant public attention and criticism, including numerous editorials in local media that were unfavorable to Defendants.

## **The Parking Ordinance Dispute**

44.     Displeased and embarrassed by the public outcry over their unfair and disparate targeting of Atiyeh, Gettysburg Investors, and Gallery 30 under the Sign Ordinance, Defendants conspired to retaliate against Atiyeh by interfering with her ability to use her Properties for the intended purposes of operating her Businesses.

45.     Defendants knew that they could interfere with Atiyeh's lawful use of her Properties by restricting Plaintiffs' ability to secure parking for patrons of the Businesses.

46.     From 1985 until April 2019, the Borough's Parking Ordinance allowed for commercial property owners within the Borough to indefinitely reserve parking spaces in front of their properties by purchasing "meter bags."

47.     This practice, commonly referred to as "bagging," was codified in the Borough's Parking Ordinance, §§ 15-101, *et seq.* (the "Parking Ordinance"), which provided as follows:

> **§ 15-711.  Authority to Reserve Parking Meters.**
> The Police Department, under the supervision of the Mayor or, in the Mayor's absence or unavailability, the Parking Manager or the Borough Manager, is hereby authorized and empowered to issue meter bags to qualified applications therefor.  Such meter bags may be used to cover the heads of parking meters and thereby reserve metered parking spaces.  Any parking spaces so reserved shall be used to provide parking only for the following:
> A.     Parties of tourists and visiting business, civic and governmental groups;
> B.     Attendance at funerals and church events;
> C.     Trucks and equipment being used in the construction and maintenance of adjacent real estate;
> D.     Special loading and unloading purposes.
>
> **§ 15-712.  Application for Reservation; Fee.**
> The applicant desiring a meter bag shall make application for reservation therefor in writing, which applications shall state the name of the applicant, the purpose for which the reservation is desired and shall identify the vehicle or vehicles to be parking in the space so reserved.  The applicant shall also sign an agreement to pay to the Borough the sum of $1 for each hour or portion thereof that elapses from the time such meter bag is issued

9

to the applicant until the time when the same is returned to the Borough not to, however, exceed $100 each calendar month.  Payment shall be made in full promptly upon return of the issued parking meter bag, except that where such bag is retained beyond the end of any calendar month, payment shall be made to the end of such month within five days after the end thereof.

48.     For nearly 30 years, certain hotels and bed and breakfast establishments located in Downtown Gettysburg reserved parking spaces on an effectively permanent basis using the meter bag system.

49.     Based on Defendants' course of conduct in issuing reserved parking spaces for decades to other similarly situated businesses, Atiyeh reasonably understood that she could reserve parking spaces in front of her Businesses pursuant to the provisions set forth in the Parking Ordinance.

50.     Atiyeh purchased the Properties and developed plans for her Businesses based on Defendants' representations that Plaintiffs could reserve parking in front of the Businesses in the same manner that the hotels and bed and breakfast establishments reserved parking in front of their businesses on an effectively permanent basis.

51.     From April 2018 to July 2019, Atiyeh complied with the Parking Ordinance by applying and paying the fee set by the Parking Ordinance for meter bags to reserve parking spaces in front of Gallery 30 and The Upper Crust.

52.     From April 2018 to July 2019, Gallery 30 and The Upper Crust paid approximately $8,700 in meter bag fees to reserve three parking spaces in front of each of the Gallery 30 and Upper Crust Properties.

53.     The three reserved parking spaces in front of Gallery 30 allowed patrons and vendors of Gallery 30 to load and unload merchandise, including, but not limited to, heavy,

oversized, handcrafted signs and other items, to and from their vehicles, and load and unload passengers.

54.     The three reserved parking spaces in front of The Upper Crust allowed patrons to be dropped off and picked up in front of the restaurant.

55.     Additionally, the three reserved parking spaces in front of The Upper Crust allowed patrons to easily and quickly park in front of the restaurant to pick up take-out orders, a critical component of The Upper Crust's business model.

56.     On August 5, 2018, Jamilie applied for three reserved parking spaces in front of the Jamilie Property and paid for nine months of reserved parking, in the total amount of $2,700.

57.     The Borough accepted Jamilie's application and payment, and issued three reserved parking spaces to Jamilie for nine months.

58.     The Businesses' ability to reserve parking spaces is vital to the success of the Businesses and integral to Atiyeh's use of her Properties.

59.     Without the ability to reserve parking spaces, Atiyeh would have made significant changes to the plans and concepts she developed for her Businesses and the manner in which she developed the Properties.

60.     At all times relevant, Defendants were aware that Atiyeh relied on her ability to reserve parking spaces for purposes of operating the Businesses and using her Properties as intended.

61.     Upon information and belief, in the Spring of 2018, Defendants recognized an opportunity to retaliate against Atiyeh for her successful opposition in the Gallery 30 signage dispute, and developed a plan to deny Plaintiffs the ability to reserve parking spaces by amending the Parking Ordinance in a manner that specifically targeted Plaintiffs.

11

62.     At a council meeting held on May 29, 2018, Borough Council announced its intent to enact significant amendments to the Parking Ordinance.

63.     Borough Council later announced that it intended to restrict the ability of restaurants and retail businesses within the Borough – *i.e.*, Plaintiffs - to reserve parking spaces, while retaining the ability for hotels and bed and breakfast establishments to continue to reserve spaces for their customers (the "Proposed Amendments").

64.     Upon information and belief, the Businesses are the only restaurants and retail businesses within the Borough that have relied upon and reserved parking through the meter bag system.

65.     Upon information and belief, the only other businesses within the Borough that have ever relied upon and reserved parking through the meter bag system are hotels and bed and breakfast establishments.

66.     Accordingly, upon information and belief, Plaintiffs were the only property owners and businesses within the Borough that the Proposed Amendments would negatively impact.

67.     In January 2019, Atiyeh placed several full-page advertisements in the Gettysburg Times opposing the Proposed Amendments as discriminatory.

68.     Over the next several months, while the Borough Council drafted and reviewed the Proposed Amendments, Atiyeh continued to publicly oppose the Proposed Amendments, both through newspaper interviews and public meetings.

99095435

69.     On April 8, 2019, the Borough Council unanimously voted to amend the Parking

Ordinance as follows (the "Amended Parking Ordinance"):

### § 15-711.  Authority to Reserve Parking Spaces in Metered Zones; Authorized Purposes for Temporary Reservation of Public Parking Spaces.

1.     The Parking Manager, or designated Parking Department staff, or the Borough Manager, are hereby authorized and empowered to make reservations of public parking spaces for temporary parking and short-term use in metered public parking spaces on or adjacent to the streets or in the public parking areas of the Borough of Gettysburg for the purposes hereinafter provided for and set forth in this Part upon the payment of fees to be established, set or amended by resolution to be adopted from time to time by the Borough Council.

2.     <u>Purposes</u>:  Parking spaces may be reserved and used on a temporary basis for the following purposes:

a.     Temporary reserved parking for passenger buses and large capacity vans, for short-term use only, in the loading and unloading of passengers for visitation at historic sites, museums and cultural centers, theaters and tourist attractions;

b.      Temporary reserved parking for short-term use only, in connection with the conduct of funerals, weddings and special events and services at places of worship;

c.     Temporary reserved parking for the performance of construction, property maintenance and repair work at adjoining or nearby buildings or properties to be limited to a maximum of three (3) parking spaces for the parking of construction vehicles and/or construction, property maintenance and repair equipment on a weekly basis to correspond with the good faith estimated time of completion of a project and times of active work and construction at the project site;

d.     Temporary reserved parking for moving trucks and large capacity vans for short-term use only in the moving and relocation of personal property, equipment, furniture and furnishings to or from an adjoining or nearby building or property; and

e.     Temporary reserved parking for public service or contract work or use by or on behalf of a government entity, municipal authority or public utility; and

99095435

f.      Temporary reserved parking required for the conduct of a special event, as requested and approved by the Borough, pursuant to the special events approval and permitting procedures as regulated in Chapter 6, Part 9 of the Code of Ordinances of the Borough of Gettysburg.

3.      <u>Reservation of Metered Public Parking Spaces by Hotels and Bed and Breakfast Establishments</u>:  Metered parking spaces may be reserved and used only by hotel and bed and breakfast establishments (bed and breakfast use establishments shall specifically not include full-unit vacation rental uses, homestay unit rental uses, or boardinghouse or rooming house uses for purposes of reservation of public parking spaces pursuant to this provision) for the temporary use for unloading or loading purposes of arriving or department guests at the time of their check-in or departure. Further, any hotel or bed and breakfast use establishment with two (2) or fewer guest rooms generally available for occupation shall not be eligible to reserve and use metered public parking spaces pursuant to this provision. The maximum number of parking spaces that may be reserved shall be based on the number of guest rooms generally available for occupation at the hotel or bed and breakfast use establishment are set forth as follows:

a.      A minimum of three (3) to ten (10) guest rooms (inclusive) - one (1) reserved parking space;

b.      Eleven (11) to thirty (30) guest rooms (inclusive) – up to a maximum of two (2) reserved parking spaces;

c.      Thirty-one (31) to fifty (50) guest rooms (inclusive) – up to a maximum of three (3) reserved parking spaces; and

d.      Fifty-one (51) guest rooms or more – up to a maximum of four (4) reserved parking spaces.

*See* Amended Parking Ordinance, a copy of which is attached as Exhibit A.

70.     On April 17, 2019, the Borough Parking Manager issued notices to Plaintiffs, advising that pursuant to the Amended Parking Ordinance, Plaintiffs could no longer reserve parking spaces in front of their buildings, effective immediately.

71.     On May 1, 2019, the Borough removed the meter bags from the three parking spaces that Atiyeh reserved in front of Jamilie.

14

72.     On July 1, 2019, the Borough removed the meter bags from the three parking spaces that Atiyeh reserved in front of Gallery 30.

73.     On August 1, 2019, the Borough removed the meter bags from the three parking spaces that Atiyeh reserved in front of The Upper Crust.

74.     Upon information and belief, Plaintiffs are the only businesses and property owners that have lost their reserved parking spaces as a result of the Borough's enactment of the Amended Parking Ordinance.

75.     Upon information and belief, none of the hotels or bed and breakfast establishments within the Borough have lost any reserved parking spaces as a result of the enactment of the Amended Parking Ordinance.

76.     As a result of Defendants' enactment and enforcement of the Amended Parking Ordinance, Plaintiffs have suffered significant damages, including, but not limited to, lost revenue and goodwill.

**COUNT I**
**Violation of the United States Constitution**
**Equal Protection**
**(42 U.S.C. § 1983)**
**Plaintiffs v. Defendants**

77.     Plaintiffs incorporate the foregoing paragraphs as if the same were set forth fully herein.

78.     Plaintiffs have legally protected property and liberty interests in being able to use the Properties for all lawful purposes, including, but not limited to, operating the Businesses.

79.     Plaintiffs' actual or intended use of the Properties is lawful under federal, state, and local law.

15

99095435

80.     Defendants intentionally enacted the Amended Parking Ordinance to discriminate against Plaintiffs.

81.     Specifically, Defendants enacted the Amended Parking Ordinance to prohibit Plaintiffs from continuing to reserve parking spaces in front of their Properties, while allowing all other similarly situated businesses in the Borough to reserve parking spaces in front of their properties.

82.     Defendants have intentionally treated Plaintiffs differently from all other similarly situated businesses in the Borough.

83.     There is no rational or legitimate reason for Defendants' refusal to provide Plaintiffs with reserved parking spaces while providing reserved parking spaces to other property owners.

84.     Defendants' actions in treating Plaintiffs differently than other similarly situated businesses and property owners in the Borough is discriminatory, irrational, capricious and arbitrary.

85.     Defendants' actions in treating Plaintiffs differently than other similarly situated businesses and property owners in the Borough were motivated by an intent to inhibit Plaintiffs from exercising their constitutional right to use the Properties for the intended and lawful purposes of operating the Businesses.

86.     Defendants have violated Plaintiffs' rights to equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution.

87.     Plaintiffs have suffered and will continue suffer damages as a direct and proximate result of Defendants' actions.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

a.      Enter judgment in favor of Plaintiffs and against Defendants;

b.      Declare that the Amended Parking Ordinance is unconstitutional;

c.      Declare that Defendants denied Plaintiffs their rights to due process and equal protection under the Constitution of the United States;

d.      Declare that Plaintiffs may continue to reserve parking spaces in the same manner and under the same terms and conditions as they reserved parking spaces prior to the enactment of the Amended Parking Ordinance;

e.      Award Plaintiffs actual, compensatory, and punitive damages;

f.      Award Plaintiffs their reasonable attorneys' fees and costs; and

g.      Award all further relief that the Court deems proper and necessary.

<u>**COUNT II**</u>
<u>**Violation of the United States Constitution**</u>
<u>**Substantive Due Process**</u>
<u>**(42 U.S.C. § 1983)**</u>
<u>**Plaintiffs v. Defendants**</u>

88.     Plaintiffs incorporate the foregoing paragraphs as if the same were set forth fully herein.

89.     The substantive due process protections under the Fourteenth Amendment of the United States Constitution require that government action depriving a person of life, liberty or property have a rational, non-arbitrary connection to a legitimate purpose.

90.     Where a municipality exercises its police power, the means which it employs must have a real and substantial relation to the objects sought to be obtained.

91.     Regulations that do not operate on all alike cannot be justified under the police power.

17

92.     As set forth above, Plaintiffs possess a constitutional right to access and use the Properties for the lawfully intended purpose of operating the Businesses.

93.     Defendants have acted under color of law by enacting and applying the Amended Parking Ordinance and depriving Plaintiffs of their constitutionally protected right to use the Properties for the intended and lawful purposes of operating the Businesses.

94.     Defendants' actions do not have a rational, non-arbitrary connection to a legitimate purpose.

95.     Defendants have deprived Plaintiffs of their rights secured by the substantive due process protections of the United States Constitution.

96.     Plaintiffs have suffered and will continue to suffer damages as a direct and proximate result of Defendants' actions.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

a.      Enter judgment in favor of Plaintiffs and against Defendants;

b.      Declare that the Amended Parking Ordinance is unconstitutional;

c.      Declare that Defendants denied Plaintiffs their rights to due process and equal protection under the Constitution of the United States;

d.      Declare that Plaintiffs may continue to reserve parking spaces in the same manner and under the same terms and conditions as they reserved parking spaces prior to the enactment of the Amended Parking Ordinance;

e.      Award Plaintiffs actual, compensatory, and punitive damages;

f.      Award Plaintiffs their reasonable attorneys' fees and costs; and

g.      Award all further relief that the Court deems proper and necessary.

99095435

**COUNT III**
**Violation of the United States Constitution**
**First Amendment Retaliation**
**(42 U.S.C. § 1983)**
**Plaintiffs Atiyeh, Gettysburg Investors, and Gallery 30 v. Defendants**

97.     Plaintiffs incorporate the foregoing paragraphs as if the same were set forth fully herein.

98.     Plaintiffs Atiyeh, Gettysburg Investors, and Gallery 30 engaged in constitutionally protected speech by publicly contesting Defendants' unlawful enforcement of the Sign Ordinance against Atiyeh, Gettysburg Investors, and Gallery 30 and by filing a successful appeal of Defendants' decision with the Zoning Hearing Board ("Plaintiffs' Protected Speech").

99.     Plaintiffs' Protected Speech was a substantial or motivating factor in Defendants' unlawful actions.

100.     Defendants enacted the Amended Parking Ordinance and enforced it against Plaintiffs because of, and in retaliation for, Plaintiffs' Protected Speech.

101.     Plaintiffs' Protected Speech was a proper and lawful exercise of Atiyeh, Gettysburg Investors, and Gallery 30's rights of freedom of speech and association, protected under the First Amendment to the United States Constitution.

102.     The enactment and enforcement of the Amended Parking Ordinance was in furtherance of a policy of Defendants to restrict or eliminate Plaintiffs' lawful operation of the Businesses and to interfere with Plaintiffs' use of the Properties.

103.     At the time of these acts of retaliation, Defendants knew of Plaintiffs' Protected Speech.

104.     Defendants each intended to retaliate against Plaintiffs for the Protected Speech as set forth above or acted with knowledge of and/or in reckless disregard of the effect of their actions to infringe upon and retaliate for Atiyeh, Gettysburg Investors, and Gallery 30's exercise of their First Amendment rights.

105.     Defendants each acted under color of law and pursuant to a policy, custom, or usage of the Borough and in violation of Atiyeh, Gettysburg Investors, and Gallery 30's rights under the laws and Constitution of the United States.

106.     Atiyeh, Gettysburg Investors, and Gallery 30 have suffered and will continue to suffer damages as a direct and proximate result of Defendants' actions.

**WHEREFORE**, Atiyeh, Gettysburg Investors, and Gallery 30 respectfully request that the Court:

a.     Enter judgment in favor of Plaintiffs Atiyeh, Gettysburg Investors, and Gallery 30 and against Defendants;

b.     Declare that the Amended Parking Ordinance is unconstitutional;

c.     Declare that Defendants denied Plaintiffs Atiyeh, Gettysburg Investors, and Gallery 30, their rights pursuant to the First Amendment to the Constitution of the United States;

d.     Declare that Plaintiffs Atiyeh, Gettysburg Investors, and Gallery 30, may continue to reserve parking spaces in the same manner and under the same terms and conditions as they reserved parking spaces prior to the enactment of the Amended Parking Ordinance;

e.     Award Plaintiffs Atiyeh, Gettysburg Investors, and Gallery 30, actual, compensatory, and punitive damages;

f.     Award Plaintiffs Atiyeh, Gettysburg Investors, and Gallery 30, their reasonable attorneys' fees and costs; and

g.      Award all further relief that the Court deems proper and necessary.

## COUNT IV
### Promissory Estoppel
### Plaintiffs v. Defendants

107.     Plaintiffs incorporate the foregoing paragraphs as if the same were set forth fully herein.

108.     For over a year, Plaintiffs paid the Borough to reserve parking spaces in front of the Properties consistent with their rights under the Parking Ordinance.

109.     For over a year, Defendants issued reserved parking spaces to Plaintiffs, which allowed Plaintiffs to operate the Businesses as designed and intended.

110.     Defendants issued the reserved parking spaces to Plaintiffs, knowing that Plaintiffs would reasonably be expected to act in reliance on those reserved parking spaces.

111.     Plaintiffs took action in reliance on Defendants' issuance of the reserved parking spaces.

112.     Plaintiffs incurred costs in justifiable and reasonable reliance on the representations and/or promises of the Defendants, including expending over $3 million to renovate the Properties and develop and open the Businesses.

113.     Plaintiffs have suffered and will continue to suffer direct and consequential damages as a direct and proximate result of their reasonable reliance on Defendants' prior representations and/or promises.

114.     Injustice can only be avoided by enforcing Defendants' issuance of reserved parking spaces to Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

a.      Enter judgment in favor of Plaintiffs and against Defendants;

b.      Enjoin Defendants from enforcing the Amended Parking Ordinance;

c.      Enjoin Defendants from prohibiting Plaintiffs' ability to reserve parking spaces in front of the Properties;

d.      Enjoin Defendants from unlawfully interfering with Plaintiffs' operation of the Businesses and exercise of their constitutional rights;

d.      Award Plaintiffs actual, compensatory, and punitive damages;

e.      Award Plaintiffs their reasonable attorneys' fees and costs; and

f.      Award all further relief that the Court deems proper and necessary.

**COUNT V**
**Declaratory Judgment**
**(28 U.S.C. §§ 2201, et seq.)**
**Plaintiffs v. Defendants**

115.    Plaintiffs incorporate the foregoing paragraphs as if the same were set forth fully herein.

116.    Plaintiffs seek a declaration of their rights pursuant to 28 U.S.C. § 2201.

117.    As set forth above, there is an actual, ongoing controversy between Plaintiffs and Defendants regarding the legality of the Amended Parking Ordinance.

118.    As set forth above, there is an actual, ongoing controversy between Plaintiffs and Defendants regarding whether Defendants may deny Plaintiffs the ability to reserve parking spaces in front of the Properties, while permitting other businesses within the Borough the ability to reserve parking spaces in front of their properties.

119.    Declaratory relief will resolve this controversy.

99095435

**WHEREFORE**, Plaintiffs respectfully request that the Court:

a.  Enter judgment in favor of Plaintiffs and against Defendants;

b.  Declare that the Amended Parking Ordinance is unconstitutional;

c.  Declare that Defendants denied Plaintiffs their rights to due process and equal protection under the Constitution of the United States;

d.  Declare that Defendants denied Plaintiffs Atiyeh, Gettysburg Investors, Gallery 30 and their rights pursuant to the First Amendment to the Constitution of the United States;

e.  Declare that Plaintiffs may continue to reserve parking spaces in the same manner and under the same terms and conditions as they reserved parking spaces prior to the enactment of the Amended Parking Ordinance;

f.  Award Plaintiffs actual, compensatory, and punitive damages;

g.  Award Plaintiffs their reasonable attorneys' fees and costs; and

h.  Award all further relief that the Court deems proper and necessary.

Date:   August 14, 2019

/s/ Danielle E. Ryan
Gerald E. Arth (seeking admission *pro hac vice*)
Danielle E. Ryan, #314229
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA  19103
(215) 299-2000
(215) 299-2150 (fax)
garth@foxrothschild.com
dryan@foxrothschild.com

*Attorneys for Plaintiffs Linda Atiyeh, Gettysburg Investors, LLC, The Gettysburg Moose LLC, Lincoln Square LLC, Gallery 30 LLC, The Upper Crust LLC, and Jamilie Abraham, LLC*

99095435