**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LINDA ATIYEH, et al., | |
| Plaintiffs, | CIVIL ACTION NO. 1:19-CV-01412 |
| v. | (MEHALCHICK, J.) |
| THE BOROUGH OF GETTYSBURG, et al., | |
| Defendants. | |

**<u>MEMORANDUM</u>**

This action was commenced upon the filing of a complaint by Plaintiffs Linda Atiyeh ("Ms. Atiyeh"), Gettysburg Investors, LLC, the Gettysburg Moose, LLC, Lincoln Square, LLC, Gallery 30, LLC, ("Gallery 30") the Upper Crust, LLC, ("Upper Crust") and Jamilie Abraham, LLC (collectively, "Plaintiffs") against the Borough of Gettysburg[1] ("Gettysburg") on August 14, 2019. (Doc. 1). Before the Court is a motion for summary judgment filed by the Gettysburg. (Doc. 52). For the following reasons, Defendants' motion for summary judgment will be **GRANTED.**

---

[1] The Complaint also alleges claims against Defendants Theodore H. Streeter, Susan Naugle, Patricia A. Lawson, Wesley K. Heyser, Jacob Schindel, Chris Berger, John Lawver, Charles Strauss, Charles R. Gable, and Richard L. Miller, II (collectively, "Individual Defendants"). (Doc. 1). On November 12, 2019, these parties were all terminated from this action. (Doc. 17).

I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

     The relevant factual background to Gettysburg's motion is as follows.[2] Ms. Atiyeh is an entrepreneur in Gettysburg, Pennsylvania. (Doc. 1; Doc. 54, ¶ 1). She brings this action on behalf of herself and her businesses. (Doc. 1; Doc. 54, ¶ 1). One such business is Gallery 30. (Doc. 1; Doc. 54, ¶ 8). On November 9, 2016, Gettysburg issued Gallery 30 a notice of violation of Borough Ordinance Number 19-111(3) which forbids "illegal signage," sparking a dispute between Plaintiffs and Gettysburg ("the Signage Dispute"). (Doc. 54, ¶ 6; Doc. 58-1, at 5-12). The notice threatened Ms. Atiyeh with fines and jail time. (Doc. 58-1, at 5-12). Ms. Atiyeh publicly opposed Gettysburg's enforcement of the sign ordinance against her, first appealing the enforcement action to the Zoning Hearing Board. (Doc. 54, ¶ 7; Doc. 54-1; Doc. 59, ¶ 8). After an evidentiary hearing, on February 13, 2017, the Zone Hearing Board rendered a decision in Ms. Atiyeh's favor. (Doc. 54, ¶ 8; Doc. 54-1). At Gettysburg's urging, Ms. Atiyeh then also appealed to the Borough's Historic Architectural Review Board (the "HARB"), an advisory board to the Gettysburg Borough Council ("the Council"). (Doc. 58, at 8). Ms. Atiyeh sought approval from the HARB to display merchandise on the exterior wall the Gallery 30. (Doc. 58, at 8). Voting in Ms. Atiyeh's favor, the HARB recommended the Council issue Gallery 30 a "Certificate of Appropriateness." (Doc. 58, at 8-9; Doc. 58-1, at 68). The Council issued the certificate in accordance with HARB's recommendation, thus ending the Signage Dispute. (Doc. 58, at 8-9; Doc. 58-1, at 68)

     After the Signage Dispute, Ms. Atiyeh continued building businesses in Gettysburg's downtown area. (Doc. 58, at 10). Before 2019, Gettysburg had a parking ordinance which

---

[2] This factual summary is taken from the parties' statements of material facts, supporting exhibits, and briefs. (Doc. 53; Doc. 54; Doc. 58; Doc. 59).

allowed commercial property owners to reserve parking spaces near their businesses over extended periods of time for a fee ("Original Parking Ordinance"). (Doc. 54, ¶ 9); Gettysburg Parking Ordinance, §§ 15-101, et seq. Between April 2018 and August 2018, under the Original Parking Ordinance, Ms. Atiyeh reserved and paid for a total of nine spots close to her businesses. (Doc. 54, ¶ 10). In April 2019, Gettysburg, through the Council, unanimously voted to amend the Original Parking Ordinance, enacting a new one in its place ("New Parking Ordinance"). (Doc. 54, ¶ 11; Doc. 54-2). The New Parking Ordinance limits the right to reserve parking spaces for extended periods in Gettysburg's downtown area to hotels and bed and breakfast establishments. (Doc. 54, ¶ 12; Doc. 54-2). As a result, Plaintiffs no longer have the right to reserve parking spots. (Doc. 54, ¶ 12; Doc. 54-2). Ms. Atiyeh was notified the New Parking Ordinance would be effective immediately on April 17, 2019. (Doc. 58, at 17; Doc. 58-1, at 98). According to Plaintiffs, "the Borough Council began the process of amending the [Original] Parking Ordinance in May 2018, just one month after Ms. Atiyeh first reserved parking spaces for her businesses under the then-current Parking Ordinance." (Doc. 59, ¶ 36). Throughout the Council's drafting process, Ms. Atiyeh publicly opposed the proposed amendments to the Original Parking Ordinance, both in newspaper interviews and public meetings. (Doc. 58, at 15). Whereas Plaintiffs allege the New Parking Ordinance was drafted to revoke their ability to reserve parking, Gettysburg maintains that the intent behind the New Parking Ordinance was to "relieve traffic congestion and fairly distribute the right to park in the Borough among all seeking that right." (Doc. 58, at 18; Doc. 58-2, at 105).

On August 14, 2019, Plaintiffs initiated this action by filing a complaint against Gettysburg and the Individual Defendants alleging the following claims: Count I Violation of the Equal Protection Clause under 42 U.S.C. § 1983; Count II Violation of Substantive Due

Process under 42 U.S.C. § 1983; Count III Violation of the First Amendment Retaliation under 42 U.S.C. § 1983; Count IV Promissory Estoppel; and Count V Declaratory Judgment pursuant 28 U.S.C. §§2201. (Doc. 1). On November 12, 2019, by stipulation of all the parties, the Individual Defendants were dismissed from this action, leaving Gettysburg as the sole Defendant. (Doc. 17). On April 9, 2020, the Court granted a partial motion to dismiss filed by Gettysburg, in turn dismissing Count I, Count II, and Count IV from this action. (Doc. 18). The parties subsequently moved forward with discovery on Plaintiffs' First Amendment retaliation and declaratory judgment claims, Count III and Count V of her complaint.

On March 18, 2022, Gettysburg filed a motion for summary judgment and a brief in support. (Doc. 52; Doc. 53). On March 21, 2022, Gettysburg filed a statement of material facts and exhibits. (Doc. 54). On April 22, 2022, Plaintiffs filed a brief in opposition and an answer to Gettysburg's statement of material facts. (Doc. 58; Doc. 59). On May 16, 2022, Gettysburg filed a reply brief. (Doc. 62). On May 19, 2022, Plaintiffs requested oral argument on this matter. (Doc. 63). On May 27, 2022, the Court granted Plaintiffs' motion for oral argument, however, no date was set at that time. (Doc. 64). The case was subsequently twice reassigned.[3] On March 18, 2024, the parties held oral argument on Gettysburg's motion for summary judgment. (Doc. 65). Accordingly, the matter is now ripe for disposition.

## II.   LEGAL STANDARDS

### A.   MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled

---

[3] This case was assigned to the undersigned on February 12, 2024.

to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears

the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* *477 U.S. at 323.* Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See* *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.,* 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

B. 42 U.S.C. § 1983

Plaintiffs assert their First Amendment retaliation claim pursuant to 42 U.S.C. § 1983, which provides a private cause of action for violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .
>
> 42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985). To succeed on a 42 U.S.C. § 1983 claim, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1141 (3d Cir. 1995).

III. DISCUSSION

A. PLAINTIFFS' RETALIATION CLAIM

6

A § 1983 First Amendment retaliation claim requires a showing of: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights [also known as an adverse act], and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). In this case, the parties dispute element three, whether there was a causal link between Ms. Atiyeh's protected activity (the Signage Dispute, particularly her successful appeals to the Zoning Hearing Board and the HARB), and the alleged retaliatory action (the enactment of the New Parking Ordinance).[4] (Doc. 53, at 16-18; Doc. 58, at 19-22); *Thomas,* 463 F.3d at 296. According to Gettysburg, Plaintiffs have not met their burden to establish a causal link between the Signage Dispute and the New Parking Ordinance because they have not demonstrated "that any member of the Borough Council voted to enact the Parking Ordinance Amendments as a function of retaliatory animus over Gallery 30's signage dispute" and because the record "[r]eflects a lack of temporal proximity." (Doc. 53, at 18-19). Plaintiffs respond that Gettysburg's "own documents establish that all of the Borough Council members were not only aware of the fact of Ms. Atiyeh's Protected Speech, but considered Ms. Atiyeh's Protected Speech when they decided to amend the Parking Ordinance." (Doc. 58, at 24). Also, that "[t]he temporal proximity between Ms. Atiyeh's protected conduct and the Borough's decision to amend the

---

[4] Because in their briefing the parties concede the Signage Dispute constitutes "protected activity" and that enactment of the New Parking Ordinance may constitute an "adverse action," this Memorandum will focus solely on the causal link element of Plaintiffs' retaliation claim. (Doc. 53, at 16-17; Doc. 58, at 20). As the Court here finds Plaintiffs have not met their burden to establish the causal link element of their retaliation claim, there is no need to further opine on the adverse action element for the purposes of this case.

parking ordinance presents genuine issues of material fact that must be resolved by the jury." (Doc. 58, at 27). The Court will address each of these arguments seriatim.[5]

### 1.  The Council's Motivation in Enacting the New Parking Ordinance

"Municipalities and other bodies of local government such as [Gettysburg] are liable under § 1983 only if they have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *LaVerdure, v. City of Montgomery*, 324 F.3d 123, 125 (3d Cir. 2003) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978)). The Third Circuit has held that if a local government requires a majority vote of a multimember decision-making body to establish policy, the actions of individual members of that body alone do not constitute policy. *LaVerdure, v. City of Montgomery*, 324 F.3d 123, 125 (3d Cir. 2003). This sentiment may be applied to a § 1983 First Amendment retaliation claim against a municipality challenging the enactment of an allegedly retaliatory policy. *See Watson v. Borough of Susquehanna*, 532 F. App'x 233, 236 (3d Cir. 2013) (unpublished). To establish the causal link element of this type of claim, a plaintiff must adduce sufficient evidence showing a majority of the decision-making body was substantially motivated to enact the challenged policy by the plaintiff's exercise of protected conduct. *See Watson*, 532 F. App'x at 236 (concluding that Plaintiff could

---

[5] Even though, generally, summary judgment is not the best vehicle for resolving the questions of fact posed by a First Amendment retaliation claim, because Plaintiffs have failed to produce evidence supporting the causal link element of their claim, ruling on the instant summary judgment motion is appropriate. *See Kimmett v. Corbett*, 554 Fed. Appx. 106, 114 n.8 (3d Cir. 2014) (If the context of a First Amendment retaliation claim, summary judgment is appropriate if a Plaintiff fails to introduce sufficient evidence on one of the factors typically reserved for the jury); *Perna v. Twp. of Montclair*, 409 F. App'x 581, 583 (3d Cir. 2011) ("While awards of summary judgment are as rare as hen's teeth in First Amendment retaliation cases, we will affirm such an award where a plaintiff does not produce sufficient evidence to shift the burden of persuasion to defendants.").

not establish the causal link element of their retaliation claim "when less than a majority of the decision-making body acted for an impermissible retaliatory reason"); *cf. Roy v. Dep't of Lab. & Indus.*, No. 1:21-CV-00946, 2024 WL 232163, at *8 (M.D. Pa. Jan. 22, 2024) ("generally, district courts should look at multimember bodies and only find them liable for discriminatory actions if a plaintiff can adduce sufficient evidence showing that a majority of the relevant entity was motivated by discriminatory animus"); *see also LaVerdure*, 324 F.3d at 125–26 (holding that a municipal body could not be liable under § 1983 when minority of local board allegedly acted with discriminatory animus but could not make policy without a majority vote). Necessary to this inquiry is establishing that the majority of the decision-making body knew of the plaintiff's protected conduct. *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002). Further, in these types of cases, "if a majority of defendants prove that their individual votes [to enact the policy] would have been the same" regardless "of the plaintiff's protected conduct, then the defendants as a group cannot be held liable, and no individual defendant, even one whose proof falls short, can be so held because causation is absent." *Watson v. Borough of Susquehanna*, No. 3:09-CV-294, 2012 WL 5249551, at *4 (M.D. Pa. Oct. 23, 2012), *aff'd*, 532 F. App'x 233 (3d Cir. 2013) (quoting *Coogan v. Smyers*, 134 F.3d 479, 485 (2d Cir.1998). Thus, "even if some defendants based their decision solely on impermissible grounds, a finding that a majority of defendants acted adversely to the plaintiff on legitimate grounds is sufficient for all to escape liability." *Coogan*, 134 F.3d at 485 (citing *Jeffries v. Harleston*, 52 F.3d 9 (2d Cir.1995); *Watson*, 2012 WL 5249551, at *3.

In sum, to satisfy their burden at this stage of the litigation, Plaintiffs must demonstrate that the majority of the decision-makers in this case were driven by an improper, retaliatory motive to enact the New Parking Ordinance. *See Edwards v. Pennsylvania Hum. Rels. Comm'n,*

9

No. 1:18-CV-2398, 2023 WL 1929998, at *8 (M.D. Pa. Feb. 10, 2023) (finding no liability for a Title VII discrimination claim where Plaintiff failed to demonstrate improper motives drove a majority of the votes to enact the adverse action).[6] Here, Gettysburg enacts ordinances through the vote of the Council. (Doc. 53, at 18-19); 8 P.S. § 1006(4).[7] At the time the New Parking Policy was enacted, the Council contained seven members. (Doc. 54-4, at 12). Accordingly, Plaintiffs have the burden to establish at least four of the seven Council Members knew that about the Signage Dispute and were substantially motivated by it to enact the New Parking Ordinance. (Doc. 58, at 9; Doc. 54-4, at 12); *Ambrose, Pa.*, 303 F.3d at 493; *Edwards,* 2023 WL 1929998, at *8; *see Suppan v. Dadonna*, 203 F.3d 228, 235-36 (3d Cir. 2000) ("The plaintiffs have the burden of showing by a preponderance of the evidence that their protected activity played a substantial role" in the defendants' adverse actions).

First, the parties dispute whether there is sufficient record evidence that the majority of Council members knew of Ms. Atiyeh's protected activity. (Doc. 53, at 22; Doc. 58, at 26-27). At a minimum, Plaintiffs must show that the majority of Council members had knowledge of the Signage Dispute, or their retaliation claims will necessarily fail. *Ambrose,* 303 F.3d at 493. Here, the Court finds that emails in the record sent to all Council members

---

[6] "The causation required to establish a claim under § 1983 is identical to that required under Title VII." *Brennan v. Norton*, 350 F.3d 399 (3d Cir. 2003).

[7] The Pennsylvania Legislature states that it shall be the duty of the Council:

To enact, revise, repeal and amend ordinances and resolutions under Chapter 33 (relating to ordinances), and bylaws, rules and regulations, not inconsistent with the laws of this Commonwealth, as it deems beneficial to the borough and to provide for the enforcement of the same. Unless otherwise provided, all powers shall be exercised by vote of the majority of council eligible to vote at a meeting.

8 P.S. § 1006(4).

from Borough Manager Charles Gable ("Mr. Gable") referencing the Signage Dispute support Plaintiffs' averment that the Council members were at least aware of Ms. Atiyeh's protected activity. (Doc. 58, at 24-25; Doc. 58-2, at 83-84). While the extent of their knowledge about the Signage Dispute is unclear, the Court will continue its analysis with the next necessary inquiry; whether Ms. Atiyeh's protected conduct was a substantial or motivating factor in a majority of Council members' vote to enact the New Parking Ordinance. *Edwards,* 2023 WL 1929998, at *8.

While there arguably remains a question of material fact regarding the Council's collective knowledge of Ms. Atiyeh's protected activity, the record does not support Plaintiffs' assertion that the majority of Council members were motivated to enact the New Parking Ordinance because of the Signage Dispute. First, the New Parking Ordinance was enacted by unanimous votes of the Council. (Doc. 58-2, at 24). Plaintiffs only deposed one Council member, Susan Naugle ("Ms. Naugle"). (Doc. 54-4). Ms. Naugle testified that she and the Council were motivated to amend the Original Parking Ordinance because of its age and the Council's desire to "benefit the community as a whole." (Doc. 54-4, at 63-64). While Ms. Naugle states that Ms. Atiyeh's reservation of numerous downtown parking spots "raised the issue" with the Council, her testimony does nothing to connect the Council's parking action to the Signage Dispute.[8] (Doc. 54-4, at 63-64).

---

[8] The only other evidence submitted by Plaintiffs directly from a Council member is an affidavit from a former Council member Amybeth Hodges ("Ms. Hodges"). Ms. Hodges left the Council shortly after the Signage dispute in 2017. (Doc. 58-1, at 97-99). She played no role in the enactment of the New Parking Ordinance. (Doc. 58-1, at 97-99). In her affidavit, Ms. Hodges broadly asserts "it is my belief that the Borough amended its Parking Ordinance in April 2019 specifically to retaliate against Linda and her businesses for speaking out against the Borough's actions during the Sign Ordinance Dispute involving Linda and Gallery 30."

Second, Gettysburg has submitted affidavits from all seven Council members who unanimously voted to enact the New Parking Ordinance. (Doc. 54-6). These affidavits uniformly state that Plaintiffs' protected activity "played no role whatsoever in Borough Council's decision to amend the parking ordinance." (Doc. 54-6). The affidavits further provide that each Council member voted to enact the New Parking Ordinance to ensure Gettysburg has a parking policy that supports the best public use of the very limited downtown parking space, taking into special consideration the needs of hotels and bed and breakfasts. (Doc. 54-2; Doc. 54-6); *see Mattia v. Baker*, No. CV 17-4298, 2018 WL 6621278, at *4 (E.D. Pa. Dec. 17, 2018) (relying on affidavits from board members asserting they had a legitimate reason to take an alleged discriminatory action as sufficient evidence for the purpose of a summary judgment on a municipal liability claim challenging the action of a multi-member decision-making board). Plaintiffs have pointed to no evidence that contradicts these affidavits or creates a genuine issue of fact.

Third, both parties have submitted emails from Borough citizens to then Gettysburg Parking Manager Richard Miller II ("Mr. Miller") inquiring about the newly restricted parking near Gallery 30, resultant from Plaintiffs' reservations. (Doc. 54-4, at 132-134; Doc. 58-2, at 149-151). Mr. Miller subsequently drafted a Policy Briefing Summary dated June 21,

---

(Doc. 58-1, at 98). However, the affidavit does not include a reference to any specific events or statements which led Ms. Hodges to this belief. Because "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment," the Court finds this affidavit does not create a question of material fact sufficient to defeat Gettysburg's motion for summary judgment. *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) (quoting *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990)); *see Kaszuba v. Borough of Dickson City*, 779 F. App'x 980, 984 (3d Cir. 2019) (finding the District Court correctly discounted evidence Plaintiff attempted to use to support retaliatory animus because it was based upon "opinions and beliefs.").

2018, requesting that the Council review the Original Parking Ordinance and consider amending it to "close loopholes" caused by vagueness. (Doc. 58-2, at 87-90). The Summary cites potential issues caused by the Original Parking Ordinance, including accidents, false claims, and blocked spaces, but contains no mention of the Signage Dispute. (Doc. 58-2, at 87-88). Again, this evidence supports the Council enacted the New Parking Ordinance in response to community needs, not to retaliate against Ms. Atiyeh for her protected conduct. (Doc. 58-2, at 87, 150).

Lastly, both parties have submitted "Council Work Session Minutes" from a Council meeting on May 29, 2018. (Doc. 54-4, at 109-112; Doc. 58-2, at 143). The Minutes reflect the Council discussed the "New Business" of amending the Original Parking Ordinance at the request of Mr. Miller. (Doc. 58-1, at 145). The Minutes contain no mention of the Signage Dispute. (Doc. 58-2, at 145). Again, this evidence supports Gettysburg's position that the Signage Dispute was not a catalyst for enacting the New Parking Ordinance. (Doc. 58-2, at 143-146). Plaintiffs have failed to submit any evidence to the contrary.

In an attempt to satisfy their burden of demonstrating Gettysburg was substantially motivated by Ms. Atiyeh's protected activity to enact the New Parking Ordinance, Plaintiffs point to emails and texts sent by Mr. Gable to various community members. (Doc. 58-1, at 69, 146-172; Doc. 58-2, at 83-84, 95, 150). Notably, Mr. Gable was not a Council member at the time the New Parking Ordinance was enacted. Mr. Gable did, however, copy Council members on some of his correspondences. (Doc. 58-2, at 83-84). Of note, Mr. Gable copied the Council members on an email he sent to a community member in which he stated:

> The challenge here is Linda takes a VERY broad interpretation of the Borough's ordinances – not just this one. This was the issue with the signs on the side of her store in January 2017. She interpreted the private walkway

> between her store and the hotel to be an alley, when it is not by the standards of PA Motor Vehicle Code. She applied for relief under the Zoning Hearing Board and hired an attorney to fight the issue.

(Doc. 58-2, at 84).

The record reflects that the Council members were also copied on an email Mr. Gable sent to another Borough citizen in which he again alludes to the Signage Dispute, this time without naming Ms. Atiyeh. (Doc. 58-2, at 95). What the record does not contain, however, is a response from any of the Council members to these emails or any other evidence supplying the Council members agreed with Mr. Gable's opinions contained therein. Thus, while a reasonable fact finder could theoretically conclude that Mr. Gable displayed animus towards Ms. Atiyeh because of the Signage Dispute, this finding would have no bearing on this case. (Doc. 58-1, at 69, 146-172; Doc. 58-2, at 83-84, 95, 150). Plaintiffs have produced "no evidence that [Mr. Gable] influenced [any] Council members" to vote to enact the New Parking Ordinance. *See Watson*, 532 F. App'x at 234. Mr. Gable's emails do not establish that a majority of Council members shared his arguable disdain for Ms. Atiyeh's "broad" interpretations of Borough ordinances or his ill-will stemming from the Signage Dispute. (Doc. 58-1, at 70; Doc. 58-2, at 84). Without more, this evidence does not support an inference that a majority of Council members voted to enact the New Parking Ordinance to retaliate against Plaintiffs because of Ms. Atiyeh's protected activity.

Mr. Gable's animus towards Ms. Atiyeh is inconsequential because he had no authority to enact Gettysburg policies on his own. *See Roy v. Dep't of Lab. & Indus.*, No. 1:21-CV-00946, 2024 WL 232163, at *8 (M.D. Pa. Jan. 22, 2024) ("Accordingly, the Court is not persuaded by Plaintiff's argument. . .   that courts generally do not impose liability for decisions by multimember entities when only one member of the entity—who cannot alone

make policy or take unilateral official action—exhibits discriminatory animus."); *Watson,* 2012 WL 5249551, at *5. While Plaintiffs argue Mr. Gable's conduct is relevant because the language of the New Parking Ordnance supports that he had a role in amending it, the record unquestionably maintains that Gettysburg ordinances are enacted by majority vote of the Council, not by the Borough Manager.[9] (Doc. 1-2, at 2-11); 8 P.S. § 1006(4). Regardless, the actions of one decisionmaker are not enough to impute liability on the rest of the decision-making body.[10] *See Edwards,* 2023 WL 1929998, at *8 (finding evidence of animus from one member of a decision-making body insufficient to impute an improper motive on the rest of the decision-making body, stating plaintiff "presents no evidence from which a factfinder reasonably could infer any other [decision makers] harbored similar motives."). As Mr. Gable alone did not have authority to enact Gettysburg ordinances and any retaliatory motive he had towards Ms. Atiyeh cannot be imputed onto the Council members or Gettysburg, Plaintiffs have failed to establish Gettysburg was substantially motivated to enact the New Parking Ordinance because of the Signage Dispute. Accordingly, Plaintiffs have not satisfied causal link element of their retaliation claim. *See Edwards v. Pennsylvania Hum. Rels. Comm'n,* No. 1:18-CV-2398, 2023 WL 1929998, at *8 (M.D. Pa. Feb. 10, 2023) (granting summary judgment on a retaliation claim where plaintiff failed to produce evidence that a majority of commissioners voted to terminate her in retaliation for her making workplace complaints).

---

[9] In fact, the New Parking Ordinance refers to itself as "An Ordinance of The Borough Council of The Borough of Gettysburg, Adams County, Pennsylvania." (Doc. 1-2, at 2).

[10] Notably, in this case, Plaintiffs would be equally barred from suing individual Council Members or Mr. Gable, for "if a Borough cannot be liable based on the improper actions of one of its members, neither can that individual be liable because his actions alone could not have effected any action against Plaintiff." *Watson,* 2012 WL 5249551, at *5.

### 2. Temporal Proximity Between the Signage Dispute and Enactment of the New Parking Ordinance

In a retaliation action, the requisite causal link can be shown by (1) "an unusually suggestive temporal proximity" between the adverse action and protected activity, or (2) "a pattern of antagonism coupled with timing." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted). "The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the causation element." *Conklin v. Warrington Twp.*, No. 1:06-CV-2245, 2009 WL 1227950, at *3 (M.D. Pa. Apr. 30, 2009) *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003); *see also Kachmar v. Sungard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997) (stating that "temporal proximity merely provides an evidentiary basis from which an inference can be drawn"). Ultimately, plaintiff must provide some evidence from which a reasonable fact finder could conceive there was a casual link between the protected activity and the adverse action. *Estate of Smith*, 318 F.3d at 512.

According to Plaintiffs, even though the New Parking Ordinance was enacted almost two years after the Signage Dispute, Gettysburg nonetheless retaliated "at its first opportunity," given Ms. Atiyeh is a private citizen and not a Gettysburg employee. (Doc. 58, at 29). In response, Gettysburg maintains that "there is no temporal proximity suggesting a causal connection between Plaintiffs' First Amendment protected activity and the allegedly adverse action taken by Gettysburg." (Doc. 53, at 23).

Consideration of the parties' temporal proximity arguments again weighs in favor of Gettysburg. *Perna v. Twp. of Montclair*, 409 F. App'x 581, 584 (3d Cir. 2011) (finding a two-year delay between protected activity and alleged retaliatory action to "weighs against a

finding of a causal link where there is no evidence of retaliatory animus during the intervening period."). Courts typically refuse to infer causation from temporal proximity when weeks, months, or, like in this case, years have spanned between the plaintiff's protected conduct and the defendant's retaliatory action. *Pollick v. McAndrew*, No. 3:20-CV-2096, 2021 WL 8268498, at *7 (M.D. Pa. July 15, 2021), *report and recommendation adopted*, No. 3:20-CV-2096, 2022 WL 1288225 (M.D. Pa. Apr. 11, 2022), *aff'd*, No. 22-1691, 2023 WL 4785513 (3d Cir. July 27, 2023) ("the temporal proximity from which [Plaintiff] asks us to infer retaliation is measured in years. Such a speculative, temporally remote chain of events is legally insufficient to establish causation."); *see Fischer v. Transue*, 04-2756, 2008 WL 3981521, *10 (M.D. Pa. Aug. 22, 2008) (holding that temporal proximity of three weeks was insufficient to establish causation); *Mar v. City of McKeesport*, No. 05-19, 2007 WL 2769718, at *4 (W.D. Pa. Sept. 20, 2007) (holding that temporal proximity of three months was insufficient to establish causation); *see also Onely v. Redner's Markets, Inc.*, No. CV 21-4785, 2023 WL 6626120, at *10 (E.D. Pa. Oct. 11, 2023) (finding "there is no temporal proximity between [Plaintiff's] protected activity and [Defendant's] adverse action" where there was a one and a half year gap between the two). In this case, the Signage Dispute was resolved over a year before the Council enacted the New Parking Ordinance. (Doc. 53, at 10). By this time, only three of the Council members involved in the Signage Dispute remained on the Council. (Doc. 58, at 23). This considered, Plaintiffs have pointed to no record evidence supporting their argument that the temporal proximity between the Signage Dispute and the Council's amendment of the Original Parking Ordinance was suggestive. *Pollick*, 2021 WL 8268498, at *8 (finding Plaintiff's retaliation claim failed where Plaintiff did not provide evidence establishing the temporal proximity of almost two years between the relevant acts was suggestive).

The Court recognizes Plaintiffs' implied argument that temporal proximity can be inferred in this case because Mr. Gable remained an influential, vocal, and arguably adverse figure throughout both disputes. (Doc. 58, at 27-28). The Court also understands Plaintiffs' general argument that, because Ms. Atiyeh is not a government employee, this was Gettysburg's first opportunity to retaliate.[11] (Doc. 58, at 28). However, even when considering the record in its entirety, these contentions are unsupported and insufficient to establish a causal link in this case. Again, there is no evidence that Mr. Gable influenced the Council members to enact the New Parking Ordinance or had authority to enact the ordinance on his own. Even apart from Mr. Gable, Plaintiffs have failed to establish retaliatory motive in any of the Council members. Thus, while the over a year gap is not enough to "preclude an inference of causation" on its own, "there is nothing in the record other than [Plaintiffs'] claim of causation that connects" the Signage Dispute to the majority Council members' votes to enact New Parking Ordinance. *Brennan v. Norton*, 350 F.3d 399, 420 (3d Cir. 2003). Plaintiffs' claim must therefore fail.

Even if Plaintiffs were able to establish that the record in its entirety supports the causal link element here, Gettysburg "may defeat [Plaintiffs'] case by establishing that [the Council

---

[11] Citing to a non-binding, Western District of Pennsylvania case, *Whitfield v. Chartiers Valley School District*, Plaintiffs argue "[e]ven if the protected conduct occurred years earlier, the timing of the adverse conduct may establish retaliatory motive if the government retaliated at its first opportunity." (Doc. 58, at 28); 707 F. Supp. 2d 561 (W.D. Pa. 2010). In *Whitfield*, the record contained multiple findings of retaliatory motivation among the decision-makers, and the court held that despite a three-year time gap between the protected activity and the adverse action "the record indicates that the renewal of plaintiff's contract was the first time any adverse action could be taken against her directly. . ." 707 F. Supp. 2d at 590-91. This case is distinguishable from *Whitfield* because here, Plaintiffs have proffered no evidence supporting the relevant decision makers, the Council members, took actions to target Ms. Atiyeh specifically because of her protected activity. 707 F. Supp. 2d at 590-91.

members] would have taken the same action even absent [Ms. Atiyeh's] protected conduct."
*McCann v. Winslow Twp.*, 299 F. App'x 149, 152 (3d Cir. 2008); *Ambrose*, 303 F.3d at 493;
*Whitfield*, 707 F. Supp. 2d at 591. The affidavits from each Council member and Ms. Naugle's
testimony do exactly that, attributing each Council member's decision to amend the Original
Parking Ordinance to the betterment of the downtown and strategic use of the limited parking
space. (Doc. 54-4; Doc. 54-6). Given the record before the Court, Gettysburg has established
the Council would have taken the same action regardless of Ms. Atiyeh's protected activity,
and for reasons wholly apart from the Signage Dispute which happened two years prior.

Having reviewed the entirety of the record, the Court concludes there is no way
Plaintiffs can satisfy the third element of their relation claim, as the record makes plain that
the Council enacted the New Parking Ordinance in furtherance of community interests, not
to spite Ms. Atiyeh or her businesses. No evidence has been offered to the contrary. *Weil v.
White*, 629 F. App'x 262, 267-68 (3d Cir. 2015) (finding summary judgment appropriate where
evidence in the record does not support the causal link of a retaliation claim). Summary
judgment will therefore be **GRANTED** on behalf of Gettysburg and Plaintiffs' retaliation
claim, Count III of the complaint, is **DISMISSED**.

B. Plaintiffs' Claim for Declaratory Judgment

The last remaining claim in this action is Count V: Declaratory Judgment pursuant 28
U.S.C. § 2201, the Declaratory Judgment Act. (Doc. 1, at 22). Anticipating the dismissal of
Plaintiffs' retaliation claim, Gettysburg argues:

> [T]here is no longer, any "ongoing controversy between Plaintiffs and
> Defendants regarding whether Defendants may deny Plaintiffs the ability to
> reserve parking spaces in front of the properties while permitting other
> businesses within the Borough the ability to reserve parking spaces in front of

their properties." Accordingly, Gettysburg moves for judgment in its favor and against Plaintiff as a matter of law pursuant to Fed. R.Civ.P. 56

(Doc. 53, at 24-25) (internal citations omitted).

Plaintiffs respond "the Court should deny the Borough's Motion to the extent it seeks dismissal of Plaintiffs' Declaratory Judgment claim for the same reasons it should deny the Borough's Motion regarding Plaintiffs' First Amendment retaliation claim." (Doc. 58, at 36 n.6).

Generally, plaintiffs are entitled to request declaratory relief to remedy alleged ongoing violations of their constitutional rights. *See Blakeney v. Marsico*, 340 Fed. Appx. 778, 780 (3d Cir. 2009) (Third Circuit held that to satisfy the standing requirement of Article III, a party seeking declaratory relief must allege that there is a substantial likelihood that he will suffer harm in the future) (citations omitted). According to the Declaratory Judgment Act, a Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). However, to assert a claim for declaratory judgment, under Article III a plaintiff must have standing, which requires an on-going case or controversy. *Cutaiar v. Marshall*, 590 F.2d 523, 527 (3d Cir. 1979). In *Teva Pharmaceuticals USA Inc. v. Novartis Pharmaceutical Corporation*, the Third Circuit stated that standing in the declaratory judgment context requires:

> that the dispute be "definite and concrete, touching the legal relations of the parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

482 F.3d 1330, 1336 (3d Cir. 2007) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). "The statute creates a remedy only; it does not create a basis of jurisdiction, and does not authorize the rendering of advisory opinions." *Cutaiar*, 590 F.2d at 527.

In this case, the Court has concluded that Gettysburg has not violated Plaintiffs' constitutional rights. Thus, there is no on-going case or controversy such that Plaintiffs have standing to pursue their declaratory judgment claim. *Cutaiar*, 590 F.2d at 527. Accordingly, their request for declaratory judgment is **DISMISSED** and summary judgment is **GRANTED** in Gettysburg's favor. *See Curley v. Monmouth Cnty. Bd. of Chosen Freeholders*, 2019 WL 1895065, at *11 (D.N.J. Apr. 29, 2019), *aff'd*, 816 F. App'x 670 (3d Cir. 2020) (dismissing a claim for declaratory relief where the Court had found plaintiff failed to sufficiently plead their First Amendment claim).

## IV.   CONCLUSION

Based on the forgoing, Gettysburg's motion for summary judgment is **GRANTED**. (Doc. 52). Plaintiffs' last remaining claims in this case, Count III: Retaliation pursuant 42 U.S.C. § 1983 and Count V: Declaratory Judgment pursuant 28 U.S.C. § 2201 are **DISMISSED**. The Clerk of Court is directed to **CLOSE** this case. An appropriate Order follows.

Dated: March 26, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**